Bret G. Anderson (SBN 239491)
Max R. Engelhardt (SBN 310968)
Jessica A. Barajas (SBN 227405)
FERGUSON CASE ORR PATERSON LLP
1050 S. Kimball Road
Ventura, California 93004
Telephone: (805) 659-6800
Facsimile: (805) 659-6818
Email:  banderson@fcoplaw.com; mengelhardt@fcoplaw.com
        jbarajas@fcoplaw.com

Attorneys for Plaintiff Dr. Joel Hay

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JOEL W. HAY PhD, an individual,<br><br>PLAINTIFF,<br><br>v.<br><br>The UNIVERSITY OF SOUTHERN CALIFORNIA, CATHERINE SPEAR, CAROL L. FOLT, and DOES 1-20,<br><br>DEFENDANT. | Case No. 22STCV19279<br><br>**DR. JOEL HAY'S COMPLAINT FOR DAMAGES AGAINST THE UNIVERSITY OF SOUTHERN CALIFORNIA:**<br><br>1. **VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH – RETALIATION (42 USC § 1983)**<br><br>2. **VIOLATION OF FIRST AMENDMENT RIGHT TO BE FREE FROM UNCONSTITUTIONAL CONDITIONS (42 USC § 1983)**<br><br>3. **VIOLATION OF FOURTEENTH AMENDMENT TO UNITED STATES CONSTITUTION (42 USC § 1983)**<br><br>4. **VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I SECTION 2**<br><br>5. **VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I SECTION 7**<br><br>6. **VIOLATION OF CALIFORNIA CIVIL CODE § 52.1**<br><br>7. **DISCRIMINATION ON THE BASIS OF DISABILITY (FEHA, CAL. GOVT. CODE § 12940(A)**<br><br>8. **FAILURE TO PREVENT, INVESTIGATE, AND REMEDY** |

1

COMPLAINT

2820843

**DISCRIMINATION HARASSMENT, OR RETALIATION ( VIOLATION OF THE FEHA, CAL. GOV'T CODE § 12940(K)**

9. **HARASSMENT ON THE BASIS OF DISABILITY (VIOLATION OF FEHA, CAL. GOV'T CODE § 12940(J)**

10. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS TO ACCOMMODATE DISABILITY (VIOLATION OF FEHA, CAL. GOV'T CODE § 12940(N))**

11. **RETALIATION (VIOLATION OF FEHA, CAL. GOV'T. CODE § 12940)**

12. **BREACH OF CONTRACT**

## FACTUAL ALLEGATIONS

1.      Plaintiff Joel W. Hay PhD ("Dr. Hay") is a Nevada resident currently residing in Gardnerville, Nevada, and at times relevant herein was a resident of Calabasas, California, in Los Angeles County.

2.      Defendant, the University of Southern California ("USC") is a private, not-for-profit university located in Los Angeles, California. USC is a recipient of federal funds; in 2018, it is estimated that USC received more than $1.1 billion in federal funds, comprised of grants, contracts and other financial aid.

3.      Defendant Catherine Spear ("Spear") is the Vice President for the Office for Equity, Equal Opportunity and Title IX, and Title IX Coordinator and is responsible for the First and Fourteenth Amendment violations and discriminatory actions taken against Plaintiff.  She is sued solely in her official capacity.

4.      Carol L. Folt ("Folt") is the President of the University of Southern California (USC") and is responsible for the First and Fourteenth Amendment violations and discriminatory actions taken against Plaintiff.  She is sued solely in her official capacity.

5.      Dr. Hay is unaware of the true names and capacities of defendants DOES 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Dr. Hay will amend this Complaint to show the true names and capacities of such fictitiously named defendants when

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road | 4550 E Thousand Oaks Blvd, Ste 250
Ventura, California 93004 | Westlake Village, California 91362

2820843

Exhibit A, page 15

the same have been ascertained or upon proof at trial. Based upon information and belief, Dr. Hay alleges that each fictitiously named defendant is legally responsible for the events and damages alleged in this Complaint.

6.     At all relevant times, certain defendants, including the DOE defendants, were acting as the partners, agents, servants, employees, alter egos, successors or predecessors in interest, or contractors of the other defendants, and were acting within the course and scope of such relationship with the knowledge, express or implied, of each such other named defendant.

7.     USC, Spear, Folt and DOES 1 through 20, inclusive, may be collectively referred to in this Complaint as "Defendants."

8.     For nearly 30 years, Dr. Hay has been a tenured, Full Professor and Founding Chair of Pharmaceutical Economics and Policy in Defendant USC's School of Pharmacy, with joint appointments in USC's Department of Economics and USC's Schaeffer Center for Health Policy and Economics.

9.     According to its website, USC, located in Los Angeles, California, "is one of the world's leading private research universities." It boasts of a "distinguished faculty of 4,000 innovative scholars, researchers, teachers and mentors [that] includes five Nobel laureates, and dozens of recipients of prestigious national honors…."

10.    At all times relevant herein, Dr. Hay was the Director of the Schaeffer Center/School of Pharmacy Clinical Economics Research and Education Program at USC. He also served for 15 years as the USC Project Coordinator for the Rand Evidence-Based Medicine Practice Centers of Southern California funded by the U.S. Agency for Health Research and Quality. He is also a Health Economics Research Scholar at the UCLA Center for Pediatric Vaccine Research. He is also a founding member and founding Executive Board member of the American Society for Health Economics and a founding member and founding Executive Board member of the International Society of Pharmacoeconomics and Outcomes Research.

11.    Dr. Hay has authored or coauthored over 500 scientific abstracts, reports, and presentations, including 200+ peer-reviewed scientific articles and commentaries in the fields of drug and pharmaceutical research pipeline valuation, pharmaceutical markets, pharmaceutical

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

Exhibit A, page 16

economics, health economics, outcomes research, disease management, statistics, econometrics, epidemiology, and health care in journals including:  American Journal of Cardiology; American Journal of Health-Systems Pharmacy; American Journal of Managed Care; American Journal of Public Health; Archives of Neurology; Cancer; CNS Drugs; Haemophilia; Health Care Financing Review; Health Economics, Health Policy; JAMA; Journal of AIDS; Journal of the American Geriatrics Society; Journal of Business & Economic Statistics; Journal of Clinical Gastroenterology; Journal of Health Economics; Journal of Health Politics, Policy and Law; Journal of Human Resources; Journal of the Royal Statistical Association; New England Journal of Medicine; Medical Care; Pediatrics; and Value in Health.

12.     Dr. Hay has taught health and pharmaceutical economics to thousands of PharmD students, MD students, DMD students, nursing students, physician assistant students, nurse practitioner students, undergraduate students and others.  He developed and founded the M.S. and Ph.D. graduate programs in Pharmaceutical Economics and Policy at USC in 1994, which are now some of the largest and best-known graduate programs in the field. He has graduated over 120 students with advanced degrees in pharmaceutical economics and policy and many that have subsequently won teaching and research awards, including 14 awards for top peer-reviewed research presentations at scientific conferences.

13.     In addition to the hundreds of pharmacoeconomic studies that he has conducted, he has published numerous peer-reviewed scientific articles and abstracts on drug pricing, cost effectiveness and the economic value of drugs and more recently served as guest editor of a special issue of the International Journal of the Economics of Business.

14.     In April 2015, he was one of three invited outside experts who presented to directors and staff of the U.S. Food and Drug Administration on regulation of economics claims for pharmaceutical products. He has served as a consultant to the U.S. Centers for Medicare and Medicaid Services, U.S. Agency for Healthcare Research and Quality, U.S. Centers for Disease Control and Prevention, U.S. Public Health Service, FDA, U.S. Environmental Protection Agency, Government of Hungary, Hong Kong Centre for Economic Research, Hong Kong Medical Executives Association, World Bank, California AIDS Commission, California Medi-Cal Drug

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

1   Advisory Board, County of San Diego Medically Indigent Adult Program, and County of

2   Sacramento Homeless Program.

3        15.   Dr. Hay has also written numerous health-related op-eds published in papers such as

4   Los Angeles Times, New York Times, Wall Street Journal, San Francisco Chronicle, San Diego

5   Union, Sacramento Bee, Orange County Register and Newsday. News and media networks such as

6   American Public Media, NPR, PBS, CBS, ABC, NBC, Fox News, C-SPAN, CBC, BBC and the

7   Australian Broadcast Company have interviewed him regarding health-related and drug-related

8   policy issues.

9        16.   Dr. Hay has served as a member of the Expert Advisory Panel on Drug Utilization

10  Review, United States Pharmacopeial Convention; an Executive Committee member for the

11  federally sponsored Southern California Evidence-Based Medicine Practice Center; and a member

12  of the JAMA Web Site HIV/AIDS Editorial Review Panel. He also recently completed a third

13  consecutive two-year term as a Study Section member for the Extramural Grants Review Program

14  for the Agency for Healthcare Research and Quality of the U.S. Department of Health and Human

15  Services.

16       17.   From 2004 to 2010, he was a founding member of the Health Policy Scientific

17  Council of the International Society for Pharmacoeconomics and Outcomes Research.  From 2006

18  to 2010, he was founding Co-Chair of the International Society for Pharmacoeconomics and

19  Outcomes Research (ISPOR) Drug Cost Task Force.  In 2010, this Task Force published six peer-

20  reviewed guideline papers on pharmaceutical price and costing methodology in the journal Value

21  in Health, all of which he edited and co-authored.

22       18.   He served as the Founding Editor-in-Chief of Value in Health, the peer-reviewed

23  scientific journal of the International Society for Pharmacoeconomics and Outcomes Research,

24  from its 1998 inception until 2003. In its first scientific citation impact factor, Value in Health was

25  ranked number one in two categories for the year 2004 by the ISI Journal Citation Reports®.

26       19.   He has also served as a legal expert consultant and/or testifying expert witness in

27  hundreds of cases, mostly involving economic valuation of pharmaceuticals. He has been qualified

28  to testify in court as an expert witness in dozens of cases, and  his testimony has regularly been

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

5
COMPLAINT

Exhibit A, page 18

specifically cited in court rulings.

20.    In an effort to comply with various state and federal anti-discrimination statutes, USC "prohibits discrimination on the basis of actual or perceived…age (40 years and over),…employment status, income status…medical condition (including cancer and genetic characteristics),…disability, political belief or affiliation,…and any other class of individuals protected from discrimination under federal, state, or local law, regulation, or ordinance…in any of its education programs and activities, in employment and application for employment…."[1]

21.    USC proclaims that it "adheres to national standards and procedures concerning academic and professional freedom, academic tenure, and full academic due process." (Employee Handbook, Section 3-B(1).)  "The common good depends upon the free search for truth and its free exposition." (3-B(1)(a).) "Academic freedom protects all faculty… [and] is essential to these purposes and applies to both teaching and research."  (*Id*.) "Faculty members are entitled to full freedom in research and the publication of the result, subject to adequate performance of their other academic duties…." (*Id*.) "Because it provides freedom and economic security, tenure is indispensable to the success of an institution in fulfilling its obligations to its students and to society." (*Id*.)

22.    "As citizens, the faculty members of the University have the same rights and responsibilities of free speech, thought, and action as all American citizens." (3-G.) USC's faculty polices are "intended to safeguard the freedom of speech, thought, and action of faculty, and to avoid impairment of the significant contributions they are capable of making toward improved local, state, and federal government." (3-G.)

23.    "Professional freedom is inherent within the concept of academic freedom and denotes the right of a faculty member to select those approaches to the development and exercise of professional competence and those allocations of time and place for alternative functions and commitments as appear best fitted for this purpose." (3-B(2)(a).)

24.    "Tenure confers on its bearer the right to hold his or her position with pay until retirement. Only for adequate cause and through stipulated procedures may the faculty member be

---

[1] The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation. (Section II.)

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

Exhibit A, page 19

dismissed, demoted, or placed on indefinite leave without pay from that position…. Tenured

faculty shall not be dismissed or demoted except for adequate cause…." (4-D.)

25.     "Procedures for disciplinary action shall provide a prompt, fair, adequate, reliable,

and impartial process from the initial investigation to the final result. There will be equitable

information gathering from both the reporting party and the responding party to the violation." (6-

A(9)(a).)

**USC Placed Dr. Hay on Administrative and Started a Title IX Investigation Against Him**

**After It Disagreed With Comments He Made Publicly and Privately About COVID-19**

26.     In 2020, Dr. Hay commented on a LinkedIn post about COVID-19 with his theories

regarding immunity to the disease and various factors that can positively or negatively affect

immunity.  Dr. Hay had recently read a March 2019 National Geographic article entitled, "In

Vietnam, rats are a popular food – here's why," and was studying the COVID-19 infection rates in

various countries.  In his comments, Dr. Hay theorized that perhaps the prevalence of rats as a

source of protein in the Vietnamese diet had boosted immunity to COVID-19 in Vietnam and he

suggested it as a source of study.

27.     Dr. Hay has also discussed his theories about immunity to COVID-19 and the

accuracy of tests used to detect COVID-19 in emails to and from his USC colleagues.

28.     USC placed Dr. Hay on "administrative leave" effective as of May 13, 2021. The

notice of leave stated it was "an interim measure designed to minimize disruption to the workplace

and learning environment and ensure a safe working and learning environment during the

pendency of a review of reports received by USC's Office for Equity, Equal Opportunity, and Title

IX that [he] engaged in conduct that may violate the Policy on Prohibited Discrimination,

Harassment, and Retaliation…." The notice further provided that the mandated leave was to be

"neither disciplinary in nature nor [was it to reflect] any prejudgment of the outcome of the

pending matter…" and prohibited him from "contacting any individuals regarding University

business…."

29.     Not long thereafter, on June 10, 2021, Dr. Hay received a "Notice of Investigation"

from USC ("Notice of Investigation").  The Notice of Investigation advised him that USC had

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

received and was investigating the following seven alleged violations:

      i.    That he told someone in "the early 2010s" that she "look[ed] like a Real Housewife of Atlanta";

     ii.    That he "offensively" told a pharmacology doctoral candidate that she had "high school writing";

    iii.    That he commented in 2020 on LinkedIn that Vietnamese rats did not have Covid-19 and that "Vietnamese" eat rats;[2]

    iv.    That he made culturally insensitive comments to a student;

     v.    That he made culturally insensitive comments in an email to "USC faculty members" relating to the COVID-19 pandemic;

    vi.    That he referred to another faculty member as "having a 'nice nazi name'"; and

   vii.    That "on various occasions," he "made comments to [colleagues] to the effect of 'f**k you all' and 'f**k off.'"

30.    After years of having no issues and just as Dr. Hay made comments regarding COVID-19—USC took action and drummed up events from a decade before. The Notice of Investigation provided that "the Formal Complaint [would be] investigated and resolved under the University's Formal Resolution option" and that "the University [would seek] to complete the fact-gathering stage of the investigation…within 60-90 days…." The notice also provided that USC would provide Dr. Hay with "periodic updates…during the course of the investigation…typically every 30 calendar days." The notice advised him he could expect, among other things, "a prompt" investigation, a "presumption" of innocence, "freedom to discuss the allegations under investigation…," reasonable time to prepare responses, and timeline notice of meetings or proceedings.

31.    The investigation did not conclude until almost one year later.  On June 3, 2022, Dr. Hay received an email from Vice President and Title IX Coordinator, Catherine Spear, forwarding

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road   4590 E. Thousand Oaks Blvd, Ste 250
Ventura, California 93004   Westlake Village, California 91362

---

[2] In its March 14, 2019 edition, National Geographic published an article by Christine Dell'Amore titled "In Vietnam, rats are a popular food—here's why."

2820843

Exhibit A, page 21

him a digital copy of the "Investigative Report" from USC ("Investigative Report"). The Investigation Report advised him that the Office for Equity, Equality Opportunity, and Title IX had found that there was sufficient evidence to find Dr. Hay responsible for: (i) Protected Class Hostile Environment Harassment based on race, national origin, ethnicity, religion, and disability; (ii) Non Protected Class Harassment; (iii) Violation of a University Directive; and (iv) Retaliation, with respect to a Reporting Party. Ms. Spear's email further advised Dr. Hay that in light of the Investigative Report's findings, the matter would be referred to a Sanctioning Panel that would be responsible for determining "sanctions/corrective actions" for Dr. Hay.

32.     From the time Dr. Hay was placed on administrative leave, he has been unable to work, has been unable to and prohibited from communicating with students, has been denied the ability and right to enter campus, and has had his entire academic and professional life turned upside down. In addition to being prevented from working at USC, USC's actions have impacted Dr. Hay's reputation in the academic community and as a professional consultant. Professional engagements have ceased along with his ability to work in conjunction with other universities and professionals.

33.     In addition, USC, on information and belief, took actions in the summer of 2020 because of Dr. Hay's position on COVID-19 to prevent Dr. Hay from lawfully accessing his vested retirement account balances. In addition, USC has denied Dr. Hay appropriate cost of living adjustments in his compensation. As a direct and proximate result of USC's unlawful and discriminatory conduct, Dr. Hay incurred lost damages, wages, and investment opportunities that he otherwise would have been able to take advantage of were it not for USC's actions, in such amounts as will be proven at trial. USC's actions have also diminished his status and rights as a tenured faculty member.

34.     As a direct and proximate result of USC's actions, Dr. Hay has also experienced physical, mental and emotional distress. USC's efforts to completely cancel Dr. Hay have had a disastrous impact on Dr. Hay. USC was aware of the strain and impact its actions were having on Dr. Hay's personal life. Dr. Hay is currently undergoing therapy directly because of the harm and damage that USC has caused.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

35.     As a direct and proximate result of USC's actions, Dr. Hay's ability to perform essential life functions has been impacted. He is currently undergoing therapy to address the damage that USC has caused. USC took actions against Dr. Hay and failed in any regard to accommodate him and help him.

36.     Dr. Hay has received a "Right to Sue" letter from the California Department of Fair Employment and Housing and has exhausted all necessary administrative remedies.  A true and correct copy of the "Right to Sue" letter is attached hereto as **Exhibit 1** and incorporated herein by reference.

**USC IS A "STATE ACTOR" AND SUBJECT TO LIABILITY UNDER 42 U.S.C. § 1983**

37.     In *Brentwood Academy v. Tennessee Secondary School v. Tennessee Secondary School Ass'n.* 531 U.S. 288 (2001), the Supreme Court held private entities could engage in state action.  There are several facts considered when finding a private entity's actions constitute state action.  Specifically, if the state exercised "coercive power" or provided "significant encouragement," whether there is "joint participation between the private party and the state, whether the private party was delegated a public function, and whether the private party is entwined with the government. *Id.* at 296. Furthermore, state action can be found where a party's specific conduct constitutes state action.

38.     20 U.S.C. § 1681(a) states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(c) further states the statute applies to, "any public, private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college or department which are administratively separate units, such terms means each such school, college or department."

39.     USC is an educational institution that received Federal financial assistance and 20 U.S.C. § 1681 applies to it, thus necessitating USC to create policies, departments, offices and positions to carry out and enforce the requirements of 20 U.S.C. § 1681.  In fact, Defendant

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

10
COMPLAINT

Exhibit A, page 23

Spear's position as the Vice President for the Office for Equity, Equal Opportunity and Title IX, and Title IX Coordinator was created to implement and enforce the provision of 20 U.S.C. § 1681.

40.     USC's "Policy on Prohibited Discrimination, Harassment, and Retaliation" states in pertinent part, "The University of Southern California prohibits discrimination on the basis of actual or perceived race, color, ethnicity, religion (including religious dress and grooming practices), creed, sex, age….and any other class of individuals protected from discrimination under federal, state, or local law, regulation, or ordinance in any of the University's educational or otherwise federally-funded programs and activities, and in the employment (including application for employment) and admissions (including application for admission) context, as required by: (1) Title IX of the Education Amendments of 1972 and its implementing regulations, 20 U.S.C. § 1681 et seq.; (2) Title III of the Americans with Disabilities Act of 1990, as amended in 2008; (3) Section 504 of the Rehabilitation Act of 1973; (4) Title VI and VII of the Civil Rights Act of 1964; the Age Discrimination Act of 1975; (5) the Age Discrimination Act of 1967; (6) the California Fair Employment and Housing Act; (7) Section 1557 of the Affordable Care Act, 42 USCA § 18116, and other federal state, and local laws, regulations, or ordinances that prohibit discrimination, harassment, and/or retaliation." (*The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation*, p. 1.)

41.     The "Policy on Prohibited Discrimination, Harassment, and Retaliation" states "Title IX's implementing regulations require that the University designate and authorize at least one employee, called a Title IX Coordinator, to coordinate its efforts to comply with its responsibilities under Title IX. California Education Code Section 66281.8, also requires the designation of at least one employee to coordinate the University's efforts to comply with and carry out its responsibility." (*The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation*, p. 6 fn. 4)

42.     The "Policy on Prohibited Discrimination, Harassment, and Retaliation" further states that, "[t]he University has appointed a Vice President for Equity, Equal Opportunity, and Title IX (VP for EEO-TIX), who also serves as the University's Title IX Coordinator, to coordinate the University's compliance with federal and state civil rights laws, including Title IX.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 24

The VP for EEO-TIX is responsible for coordinating the provision of comprehensive education and training; coordinating the University's timely, thorough, and fair response, investigation, and the resolution of all reports of Prohibited Conduct under this Policy; and monitoring the effectiveness of this Policy and related resolution Processes, as well as education and training programs, to ensure a safe, non-discriminatory, non-harassing, non-retaliatory, and inclusive University environment." (*The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation*, p. 6.)

43.     Additionally, USC has created formal and informal processes to resolve Title IX complaints that comply with Title IX regulations.  The "Policy on Prohibited Discrimination, Harassment, and Retaliation" states, "the University has developed formal and informal processes to investigate or otherwise address reports of Prohibited Conduct.  Because the regulatory requirements for resolution processes are more prescriptive under Title IX than other forms of harassment, discrimination, or retaliation the University maintains the following two distinct resolution processes for resolving a report or Formal Complaint of Prohibited Conduct under this Policy: 1. Resolution Process for Discrimination, Harassment, and Retaliation; 2. Resolution Process for Sexual Misconduct."  (*The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation*, p. 31.)

44.     USC has also ensured the individuals involved in the implementation and enforcement of Title IX requirements received proper training, stating in its "Policy on Prohibited Discrimination, Harassment, and Retaliation" that "[i]ndividuals involved in the implementation of this Policy also receive regular, comprehensive training on this Policy and Resolution Processes, which incorporates all required training content, including specific training required by the Clery Act and Title IX." (*The University of Southern California Policy on Prohibited Discrimination, Harassment, and Retaliation*, p. 32.)

45.     By accepting federal funding in exchange for implementing policies consistent with Title IX; by creating an office dedicated to implementing and enforcing the provisions of Title IX; by creating an administrative position responsible for overseeing the implementation and enforcement of Title IX's requirements; by training employees on the implementation and

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste.250
Westlake Village, California 91362

Exhibit A, page 25

1  enforcement of Title IX; by creating separate and distinct processes for investigating Title IX

2  complaints; by carrying out formal investigations and hearings and rendering judgments on Title

3  IX complaints, USC has become a state actor and, thus, subject to liability under 42 U.S.C. § 1983

4  and the First and Fourteenth Amendments of the U.S. Constitution.

5       46.    In addition, while Dr. Hay was publicly expressing his professional opinions about

6  COVID-19 and as USC began taking punitive actions against Dr. Hay for his opinions, on

7  information and belief, USC requested and obtained tens of millions of dollars in aid from the

8  Federal Government under its Paycheck Protection Program. USC was also, throughout the

9  COVID-19 pandemic, enforcing and implementing protocols mandated by state and federal

10  COVID-19 emergency orders.

11                                **FIRST CAUSE OF ACTION**

12    **(Violation of Plaintiff's First Amendment Right to Freedom of Speech – Retaliation)**
                                    **(42 U.S.C. § 1983)**

13                                  **(Against All Defendants)**

14       47.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 46 as through

15  fully set forth herein.

16       48.    Because Dr. Hay has commented publicly about his theories regarding COVID-19,

17  Defendants have taken the above described actions against him based on the content of his speech

18  and his viewpoint.

19       49.    By punishing Dr. Hay with "administrative leave," not allowing him to work and/or

20  communicate with colleagues and students at all, subjecting him to a lengthy and invasive

21  investigation and threatening "sanctions/corrective actions," Defendants have retaliated and are

22  retaliating against Dr. Hay for exercising his First Amendment rights.

23       50.    Dr. Hay's discussions and comments on the controversial topic of COVID-19 are

24  matters of public concern and protected by the First Amendment.

25       51.    Defendants' decision to place Dr. Hay on "administrative leave" and preventing him

26  from any contact with his colleagues and students, subjecting him to a lengthy and invasive

27  investigation and threatening "sanctions/corrective actions," constitutes retaliation against Dr. Hay

28  for his speech on these matters of concern.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

COMPLAINT

Exhibit A, page 26

52.     The timing of Defendant's actions and statements by USC officials and others make clear that Defendants began the investigation of Dr. Hay, placed Dr. Hay on administrative leave and are now threatening "sanctions/corrective actions," all to prevent Dr. Hay from expressing his views on COVID-19.

53.     But for Dr. Hay's speech, Defendants would not have taken these actions. The investigation and decision to place Dr. Hay on administrative leave coming soon after his comments on COVID-19 show Defendants' retaliatory motive against him.  Defendants had no other compelling justification for acting against Dr. Hay other than their disagreement with the viewpoints that Dr. Hay expressed.

54.     Defendants' conduct alleged herein is unconstitutional retaliation prohibited by the First Amendment. *See Demers v. Austin*, 729 F.3d 1011. 1019 - 1020 (9th Cir. 2013) (reiterating that the First Amendment continues to "apply to teaching and academic writing" in light of the "expansive freedoms of speech and thought associated with the university"), (*quoting Grutter v. Bollinger*, 539 U.S. 306. 329 (2004); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) ("To impose any straight jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation…Scholarship cannot flourish in an atmosphere of suspicion and distrust. Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die").

## SECOND CAUSE OF ACTION

**(VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO BE FREE FROM UNCONSTITUTIONAL CONDITIONS)**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

55.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 54 as though fully set forth herein.

56.     By conditioning Dr. Hay's ability to teach students in the classroom (and ultimately) his employment status at USC upon his willingness to surrender his constitutionally protected right to express his views on COVID-19, Defendants have imposed or threatened to impose an unconstitutional condition upon him in violation of his First Amendment rights.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 27

57.     As a result of the administrative leave, the findings in the Investigative Report, and the threat of "sanctions/corrective actions," Dr. Hay has a credible fear that Defendants will continue to take further retaliatory actions against him for his speech, including by not limited to taking away his tenure and terminating his employment.

### THIRD CAUSE OF ACTION

**(VIOLATION OF FOURTEENTH AMENDMENT TO UNITED STATES CONSTITUTION)**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

58.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 57 as though fully set forth herein.

59.     Defendants acted under color of State law when they decided to subject Dr. Hay to administrative leave and prevent him from teaching and communicating with his colleagues and students, subjecting him to an investigation and threatening "sanctions/corrective actions" thereby violating Dr. Hay's Fourteenth Amendment right to due process.

60.     Dr. Hay has protected First Amendment liberty interests in the right to speak, write and publish his views on COVID-19.

61.     Dr. Hay has a right to not be subjected to: (1) unwarranted administrative leave preventing him from teaching and communicating with his colleagues and students; (2) an invasive and lengthy investigation; and (3) threats of "sanctions/corrective actions" for engaging in in his expressive First Amendment activity.

62.     By subjecting Dr. Hay to: (1) unwarranted administrative leave preventing him from teaching and communicating with his colleagues and students; (2) an invasive and lengthy investigation; and (3) threats of "sanctions/corrective actions," Defendants have engaged in conduct that was "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience," and therefore that conduct constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd., Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 28

## FOURTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 2)
### (Against All Defendants)

63.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 62 as through fully set forth herein.

64.    Defendants' decision to subject Dr. Hay to: (1) unwarranted administrative leave preventing him from teaching and communicating with his colleagues and students; (2) an invasive and lengthy investigation; and (3) threats of "sanctions/corrective actions" violates Dr. Hay's rights under Article I, Section 2 of the California Constitution.

65.    In California "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right." Cal. Const. art. 1, § 2.

66.    "The California Supreme Court has recognized that the California Constitution is "more protective, definitive and inclusive of rights to expression and speech' than the First Amendment to the United States Constitution." *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1167 (9th Cir. 2007).

67.    Dr. Hay has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing his administrative leave and subjecting him to unwarranted "sanctions/corrective actions."

68.    The above-described conduct was a proximate cause of harm to Dr. Hay.

69.    Dr. Hay seeks declaratory and injunctive relief for the violation of his rights under Article I, Section 2 of the California Constitution.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 7)
### (Against All Defendants)

70.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 69 as through fully set forth herein.

71.    In California, "[a] person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. 1 § 7.

72.    Dr. Hay has no adequate remedy at law and will suffer serious and irreparable harm

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 29

to his constitutional rights unless Defendants are enjoined from continuing his administrative leave and subjecting him to unwarranted "sanctions/corrective actions."

73.    The above-described conduct was a proximate cause of harm to Dr. Hay.

74.    Dr. Hay seeks declaratory and injunctive relief, not damages, for the violation of his rights under Article I, Section 7 of the California Constitution.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA CIVIL CODE § 52.1)
### (Against All Defendants)

75.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 73 as through fully set forth herein.

76.    Defendants' decision to subject Dr. Hay to (1) unwarranted administrative leave preventing him from teaching and communicating with his colleagues and students; (2) an invasive and lengthy investigation; and (3) threats of "sanctions/corrective actions" interferes with Dr. Hay's exercise of the right to free speech and to assembly guaranteed by the First Amendment to the United States Constitution and Article I, § 2 of the California Constitution and his right to due process guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, § 7 of the California Constitution.  This was and is a violation of California Civil Code § 52.1

77.    Unless enjoined by this Court, Defendants will continue to infringe Dr. Hay's constitutionally protected rights and thereby cause irreparable injury, as damages alone cannot fully compensate Plaintiff for the ensuing harm.  This threat of injury from continuing violations requires injunctive relief.

## SEVENTH CAUSE OF ACTION

### (DISCRIMINATION ON THE BASIS OF DISABILITY)
### (Violation of FEHA, Cal. Govt. Code § 12940(a))
### (Against USC)

78.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 77 as through fully set forth herein.

79.    The FEHA provides that "the opportunity to seek, obtain, and hold employment without discrimination because of…disabilities…is hereby recognized as and declared to be a civil

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd., Ste 250
Westlake Village, California 91362

17

2820843

right." Cal. Gov't Code § 12921(a).

80.     The purpose of the FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, *inter alia*, disabilities.  FEHA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general. *See* Cal. Gov't Code § 12920.

81.     At all relevant times herein, Dr. Hay was an employee protected by California Government Code section 12940(a), which *inter alia*, prohibits an employer from terminating the employment of an employee based on a disability.  Under California law, a disability includes not only a current disability, but also being perceived or regarded by the employer as having or having had a condition that currently has no disabling effect but *may become* an impairment limiting the individual's ability to participate in major life activities in the future (including working). *See* California Government Code § 12926(j).

82.     As alleged herein, on information and belief, USC knew that Dr. Hay was demonstrating symptoms of a disability and/or a member of a protected class that required treatment and/or accommodation and that its unlawful violation of his First Amendment rights were causing him to suffer physically, and emotionally. USC completely disregarded these symptoms, which arose after it deprived him of his First Amendment rights and removed him from the professional community at USC and elsewhere. USC was dismissive, knew something was "wrong" with Dr. Hay but willfully failed to take any corrective or assistive actions. Instead, USC continued and furthered its restrictive, unconstitutional conduct, in part because Dr. Hay was struggling. Defendant USC knew that Dr. Hay had a disability covered under the FEHA.

83.     Plaintiff alleges on information and belief that Dr. Hay's disability was a motivating factor in Defendant USC's decision to place Dr. Hay on administrative leave, subject him to a lengthy and invasive investigation, and threaten him with "sanctions/corrective actions," and to increase and/or continue restrictions placed upon him at USC, which remain as of the date of this filing.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

### EIGHTH CAUSE OF ACTION

**FAILURE TO PREVENT, INVESTIGATE, AND REMEDY DISCRIMINATION HARASSMENT, OR RETALIATION**
**(Violation of the FEHA, Cal. Gov't Code § 12940(k)**
**(Against USC)**

84.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 83 as through fully set forth herein.

85.     California law requires employers to "take all reasonable steps necessary to prevent" and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior in the workplace. *See* Cal. Gov't Code § 12940(j). "Harassment of an employee…shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action"). Pursuant to this statute, Defendant USC was required to take all reasonable steps to prevent harassment, discrimination, and retaliation based on Dr. Hay's sex, gender, and/or disability.

86.     During Dr. Hay's employment, Defendant USC failed to prevent its employees and agents from engaging in intentional actions that resulted in Plaintiff being treated less favorably, and subjected to harassment and a hostile work environment, because of Dr. Hay's condition as described above. Although Defendant USC was aware of several actions towards Dr. Hay that constituted harassment, discrimination, and retaliation, Defendant USC did not take immediate or corrective action to prevent further harassment, discrimination, and/or retaliation against Dr. Hay.

87.     As alleged herein and above, Defendant USC violated California law by failing to take all reasonable steps necessary to prevent the harassment, discrimination, and retaliation from occurring. *See* Cal. Gov't Code § 12940(k).

88.     As a proximate result of Defendant USC's willful, knowing, and intentional failure to prevent, investigate or remedy harassment, discrimination, and retaliation against Dr. Hay, Dr. Hay has sustained and continues to sustain substantial losses of earnings and other employment benefits.

89.     As a proximate result of Defendant USC's willful, knowing and intentional failure to prevent, investigate, or remedy discrimination, harassment, or retaliation against Dr. Hay, Dr. Hay has suffered and continues to suffer humiliation, emotional distress, and mental and physical

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

1   pain and anguish, all to his damage in a sum according to proof.

2       90.     Dr. Hay has incurred and continues to incur legal expenses and attorneys' fees.

3   Pursuant to California Government Code section 12965(b), Dr. Hay is entitled to recover

4   reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

5       91.     Defendant USC committed the acts herein despicably, maliciously, fraudulently,

6   and oppressively, with the wrongful intention of injuring Dr. Hay, from an improper and evil

7   motive amounting to malice, and in conscious disregard of the rights of Dr. Hay. Dr. Hay is thus

8   entitled to punitive damages from Defendant USC in an amount according to proof.

9                          **NINTH CAUSE OF ACTION**

10              **HARASSMENT ON THE BASIS OF DISABILITY**
                **(Violation of FEHA, Cal. Govt. Code § 12940(j)**
11                          **(Against USC)**

12      92.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 91 as though

13  fully set forth herein.

14      93.     California Government Code provides that it shall be unlawful for an employer or

15  for any person to harass an employee because of a person's disability. *See* Cal. Gov't Code §

16  12940(j).

17      94.     As alleged above, during Dr. Hay's employment with Defendant USC, Defendant

18  USC intentionally engaged in harassment based on Plaintiff's disability.  Defendant USC,

19  including through its managers and supervisors, acted in a manner that was antagonistic to Dr. Hay

20  and which exhibited harassing motivations, intentions, and consciousness. A reasonable person

21  subjected to the harassing conduct would find, as Dr. Hay did, that the harassment so altered

22  Plaintiff's working conditions as to make it more difficult to do his job.

23      95.     The doctrines of equitable tolling and continuing violations apply to Dr. Hay's

24  claim of harassment.  *See Richards v. CH2M Hill, Inc.* 26 Cal.4th 798, 820 (2001) (an employee is

25  not required to file a lawsuit the moment conditions become intolerable for the employee); *accord,*

26  *McDonald v. Antelope Valley Community College Dist.,* 45 Cal.4th 88, 108-09 (2008).

27      96.     As a proximate result of Defendant USC's willful, knowing, and intentional

28  harassment against Dr. Hay, Dr. Hay has sustained and continues to suffer humiliation, emotional

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste.250
Westlake Village, California 91362

2820843

Exhibit A, page 33

distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

97.     Dr. Hay has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), Dr. Hay is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

98.     Defendant USC committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Dr. Hay, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Dr. Hay. Dr. Hay is thus entitled to punitive damages from Defendant USC in an amount according to proof.

### TENTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS TO ACCOMMODATE DISABILITY
**(Violation of FEHA, Cal. Govt. Code § 12940(n))**
**(Against USC)**

99.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 98 as though fully set forth herein.

100.    It is unlawful under the FEHA for an employer to fail to engage in a timely, good faith interactive process with the employee to determine effective reasonable accommodations for an employee with a known disability.  (*See* Cal. Gov't Code §§ 12940(n);12926.1(e).)

101.    Under the FEHA, employers who are aware that an employee has a disability have an affirmative duty to engage in the interactive process to identify and provide reasonable accommodations for such disability.  The duty arises even if the employee has not requested reasonable accommodation.  In particular, employers are obligated to initiate a timely, good-faith interactive process to accommodate an employee's disability when the employer has become aware of the possible need for an accommodation because the employee with a disability has exhausted leave under the CFRA for the employee's own serious health condition or the employee's health care provider indicates that further accommodation is still necessary for recuperative leave or other accommodation for the employee to perform the essential functions of the job. (*See* Cal. Code Regs., tit. 2 § 11069(b).)

102.    The FEHA requires a timely, good faith, interactive process between an employer

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 34

and an employee with a known disability, which includes the exchange of essential information "without delay or obstruction of the process." (Cal. Code Regs., tit. 2 § 11069(a).)

103.    As part of a timely, good-faith interactive process, an employer "shall analyze the particular job involved and the essential functions of the job." (*See* Cal. Code Regs., tit. 2, § 11069(c)(5).) An employer "shall identify potential accommodations and assess the effectiveness each would have in enabling the applicant to have an equal opportunity to…perform the essential function of the position held." Cal. Code Regs., tit 2, § 11069(c)(1).

104.    Defendant USC knew that Dr. Hay was suffering from a disability covered under California Government Code section 12926(j).

105.    As alleged above, USC failed to engage in the interactive process with Dr. Hay to determine what accommodations, other than limited medical leave, would enable Dr. Hay to perform the essential functions of his position.  Instead, Defendant USC initiated a burdensome and difficult investigation into Dr. Hay and placed him on administrative leave, preventing him from teaching and interacting with students and his colleagues and threatened him with "sanctions/corrective actions."

106.    As a proximate result of Defendant USC's willful, knowing and intentional conduct, as alleged above, Dr. Hay has sustained and continues to sustain substantial losses of earnings and employment benefits.

107.    As a proximate result of Defendant USC's willful, knowing, and intentional conduct, as alleged above, Dr. Hay has suffered and continues to suffer humiliation, emotional distress and physical and mental pain and anguish, all to his damage in a sum according to proof.

108.    Dr. Hay has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), Dr. Hay is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

109.    Defendant USC committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Dr. Hay, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Dr. Hay.  Dr. Hay is thus entitled to punitive damages from Defendant USC in an amount according to proof.

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

Exhibit A, page 35

**ELEVENTH CAUSE OF ACTION**

**FEHA RETALIATION AGAINST ALL DEFENDANTS**
(Against USC)

110.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 109 as though fully set forth herein.

111.    Dr. Hay believes and thereon alleges that Defendant USC's adverse actions taken against him as set forth herein occurred in retaliation for Defendant USC becoming aware that Dr. Hay suffers from a disability which would have restricted his work activities in the future and for which he should have been granted appropriate accommodations. Such retaliatory actions are unlawful, discriminatory and retaliatory in violation of California Government Code § 12940 et seq. and have resulted in damages and injury to Dr. Hay as alleged herein.

112.    As a proximate result of Defendants USC's retaliatory acts, Dr. Hay has sustained and continues to sustain substantial loss in career opportunities, past, present and future earnings, and other employment benefits, in amounts to be proven at trial. Dr. Hay's damages include all consequential, general, and special economic damages in amounts to be proven at trial.

113.    As a further proximate result of Defendant USC's retaliatory acts, Dr. Hay has suffered and continues to suffer humiliation, severe emotional distress and mental and physical pain and anguish, all to his damage in a sum according to proof.

114.    The foregoing acts of Defendant USC were oppressive, malicious, and despicable, and Dr. Hay is, therefore, entitled to an award of punitive damages against Defendant USC in an amount to be proven at trial.

**TWELVTH CAUSE OF ACTION**

**Breach of Contract**
(Against USC)

115.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 to 114 as though fully set forth herein.

116.    On or about June 1992, Dr. Hay and USC, and Does 1 through 20, inclusive, entered into a written Faculty Contract ("Contract") under which Dr. Hay was made a member of USC's tenured faculty and agreed to: "enhance knowledge and the public good through

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

Exhibit A, page 36

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

scholarship, professional development, and academic publications; to teach and counsel students; to participate in scholarly societies and public service; and to share in University governance through service on University and school committees and through performance of similar institutional responsibilities," in exchange for a salary.  A true and correct copy of the Contract is attached hereto as **Exhibit 2** and incorporated herein by reference. The Contract was renewed each year with an increase in salary. He remains under contract as of the date of the filing of this Complaint.

117.    The Contract refers to USC's Faculty Handbook (hereinafter "Faculty Handbook") stating, "The duties of the Faculty Member shall be in accordance with the normal and customary requirements of the University and the department(s) of appointment, in accordance with the policies set out in the Faculty Handbook," and "This contract between the University and the Faculty Member also includes the academic practices and policies, including policies on faculty/student relations set out in the Faculty Handbook."  A true and correct copy of the relevant portions of the Faculty Handbook is attached hereto as **Exhibit 3** and incorporated herein by reference.

118.    In section 3-B(1) of the Faculty Handbook, entitled "Faculty Rights and Responsibilities," the USC Faculty Handbook guarantees to its faculty that their academic freedom will be respected and protected.  It states: "The University adheres to national standards and procedure concerning academic and professional freedom, academic tenure, and full academic due process."

119.    The Faculty Handbook further states, "The University of Southern California exists for the common good, and not to further the interest of solely the individual faculty member or the institution as a whole.  The common good depends upon the free search for truth and its free exposition.  Academic freedom protects all faculty, of every track and every rank, full-time and part-time.  Academic freedom is essential to these purposes and applies to both teaching and research.  Freedom in research is fundamental to the advancement of truth.  Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning.  It carries with it duties correlative with rights."

Exhibit A, page 37

120.     The Faculty Handbook guarantees academic freedom not only in the classroom and for research purposes but outside the classroom in their daily lives as private citizens, stating, "Faculty members are entitled to freedom in the classroom in discussing their subject; to the corollary responsibility to state the truth as they see it; and to the exercise of critical self-discipline and judgment in using, extending, and transmitting knowledge.  Faculty members are citizens, members of learned professions, and officers of an educational institution. When they speak or write as citizens, they should be free from institutional censorship or discipline."

121.     Dr. Hay has performed all conditions and obligations to be performed on his part pursuant to the terms of the Contract.

122.     On May 13, 2021 USC and Does 1 through 20, inclusive, placed Dr. Hay on administrative leave and subjected him to a lengthy and invasive investigation after he publically commented on his theories about COVID-19 immunity, and have failed to afford him any semblance of due process. Defendants are now threatening Dr. Hay with "sanctions/corrective actions" for his comments.

123.     USC and Does 1 through 20, inclusive have violated the terms of the Faculty Handbook guaranteeing Dr. Hay's academic freedom and thus breached the Contract resulting in Dr. Hay's loss of professional reputation and potential consulting opportunities.

124.     Dr. Hay has been damaged, as alleged in this Complaint, because of the Defendants' breaches of his employment agreement with USC.

**PRAYER FOR RELIEF:**

**WHEREFORE** Plaintiff DR. JOEL HAY respectfully prays for judgment and relief against Defendants THE UNIVERSITY OF SOUTHERN CALIFORNIA; CATHERINE SPEAR, and CAROL L. FOLT and DOES 1 through 20, inclusive, and each of them, as follows:

1.     Declaring that all Defendants' actions constituted unlawful retaliation against Plaintiff for his protected First Amendment activities;

2.     Declaring that the unnecessarily lengthy investigation process utilized by USC violates Plaintiff's rights to due process;

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

Exhibit A, page 38

3.      Enjoining all Defendants from engaging in any further retaliatory actions against Plaintiff in response to the exercise of his academic freedom such as subjecting him to "sanctions/corrective actions," terminating Dr. Hay's employment, altering his courses, or preventing him from expressing his views on Covid-19 and vaccination;

4.      Directing by order all Defendants to cease threats of "sanctions/corrective actions";

5.      Entering judgment for Plaintiff and against all Defendants for the deprivation of his rights;

6.      Awarding Plaintiff nominal damages for the violation of his rights;

7.      Awarding Plaintiff compensatory damages, including emotional distress damages, in an amount to be ascertained at trial;

8.      Awarding Plaintiff liquidated damages as permitted by law;

9.      Awarding Plaintiff punitive damages in an amount sufficient to punish or make an example of Defendants;

10.     Awarding Plaintiff all available injunctive, equitable and other relief, including remedies authorized by California Government Code section 12965(c);

11.     Granting all "affirmative relief" as defined in California Government Code section 12926(a);

12.     Granting reasonable attorneys' fees and costs, including expert costs; and

13.     Retaining jurisdiction of this matter to enforce the terms of the Court's orders; and

14.     Granting by order such further and different relief as this Court may deem just and proper or that is necessary to make the Plaintiff whole.

Date: June 13, 2022                              FERGUSON CASE ORR PATERSON LLP

By: _____
BRET G. ANDERSON
MAX R. ENGELHARDT
JESSICA A. BARAJAS
Attorneys for Plaintiff Dr. Joel Hay

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
4590 E. Thousand Oaks Blvd, Ste 250
Westlake Village, California 91362

2820843

# EXHIBIT 1



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency     GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 26, 2022

Bret Anderson
1050 S. Kimball Rd.
Ventura, CA 93003

RE:   **Notice to Complainant's Attorney**
       DFEH Matter Number: 202205-17120726
       Right to Sue: Hay / University of Southern California

Dear Bret Anderson:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)

Exhibit A, page 41

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA | 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 26, 2022

RE:   **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202205-17120726
Right to Sue: Hay / University of Southern California

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code
section 12945.21, a small employer with 5 -19 employees, charged with violation
of the California Family Rights Act, Government Code section 12945.2, has the
right to participate in DFEH's free mediation program. Under this program both
the employee requesting an immediate right to sue and the employer charged
with the violation may request that all parties participate in DFEH's free
mediation program. The employee is required to contact the Department's
Dispute Resolution Division prior to filing a civil action and must also indicate
whether they are requesting mediation.  The employee is prohibited from filing a
civil action unless the Department does not initiate mediation within the time
period specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. You may
contact DFEH's Small Employer Family Leave Mediation Pilot Program by
emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter
number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,

Form DFEH-ENF 80 RS (Revised 02/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

May 26, 2022

Joel Hay

,

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 202205-17120726
        Right to Sue: Hay / University of Southern California

Dear Joel Hay:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective May 26, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

Form DFEH-ENF 80 RS (Revised 02/22)

Exhibit A, page 44



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)

Exhibit A, page 45

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Joel Hay                                                        DFEH No. 202205-17120726

                        Complainant,

vs.

 University of Southern California
 ,

                        Respondents

_____

**1.** Respondent **University of Southern California** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Joel Hay**, resides in the City of **,** State of **.**

**3.** Complainant alleges that on or about **May 26, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's disability (physical or mental).

**Complainant was discriminated against** because of complainant's disability (physical or mental), age (40 and over) and as a result of the discrimination was suspended, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation and as a result was reprimanded, suspended, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments.

-1-
*Complaint – DFEH No. 202205-17120726*

Date Filed: May 26, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

Exhibit A, page 46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Additional Complaint Details:** Dr. Hay has experienced physical, mental and emotional distress as a result of retaliatory actions taken by his employer, the University of Southern California ("USC"), after Dr. Hay exercised his First Amendment rights. USC's efforts to completely cancel Dr. Hay have had a disastrous impact on Dr. Hay. USC was aware of the strain and impact its actions were having on Dr. Hay's personal life. Dr. Hay is currently undergoing therapy directly because of the harm and damage that USC has caused.

As a direct and proximate result of USC's actions, Dr. Hay's ability to perform essential life functions has been impacted. He is currently undergoing therapy to address the damage that USC has caused. USC took actions against Dr. Hay and failed in any regard to accommodate him and help him.

-2-

*Complaint – DFEH No. 202205-17120726*

Date Filed: May 26, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1 | VERIFICATION

2 | I, **Bret G. Anderson**, am the **Attorney** in the above-entitled complaint.  I have read
3 | the foregoing complaint and know the contents thereof.  The matters alleged are
based on information and belief, which I believe to be true.

4 | On May 26, 2022, I declare under penalty of perjury under the laws of the State of
5 | California that the foregoing is true and correct.

6 | **Ventura, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 | -3-
*Complaint – DFEH No. 202205-17120726*

27 | Date Filed: May 26, 2022

28

Form DFEH-ENF 80 RS (Revised 02/22)

# EXHIBIT 2



**THE UNIVERSITY OF SOUTHERN CALIFORNIA**

# FACULTY CONTRACT

Year 1991-92

DATE: 06-12-92

The University of Southern California, a California non-profit corporation, (The University), and the Faculty Member named below agree that when this Contract has been signed by Faculty Member and the University, Faculty Member is appointed to the Faculty of the University on the terms and conditions set forth in this Faculty Contract:

1. **FACULTY MEMBER:** HAY, JOEL W.
   (Last Name, First, Middle)

   ████████ 250
   (Social Security Number)

2. **ACADEMIC TITLE:** ASOC PROF OF PHARMACEUTICAL ECONOMICS & POLICY

3. **CONTRACT TERM:** 03/09/92 -- 06/30/92
   (Enter: Academic Year, Fiscal Year, Fall or Spring, or Specific Dates)

4. **PRIMARY DEPT./SCHOOL:** SCHOOL OF PHARMACY

5. **SECONDARY DEPTS./SCHOOLS:** N/A

6. **FACULTY STATUS:** TENURED
   (Enter one of the following: Tenured, Probationary, Special, Voluntary)

   **6.1 Tenure decision date:** N/A
   (Enter for Probationary Faculty only; for all others enter N/A)

7. **RENEWAL OR REAPPOINTMENT STATUS:** TENURED
   (Enter either: Tenured, Notice of Non-reappointment Required, or Fixed Term)

   **7.1 Non-Reappointment notice deadline:** N/A
   (Notice of non-reappointment is required for Probationary Faculty, and for Special Faculty on renewable contracts; enter deadline date.)

   **7.2 Date fixed term employment ends:** N/A

8. **COMPENSATION BASIS:** TOTAL USC FUNDING
   (Enter applicable basis or bases. Total USC funding, partial USC funding, external funding, conditional funding)

9. **TOTAL SALARY:** $ 29,840

   **9.1 Annual base salary:** 100,000

   **9.2 Number of months annual service:** 12

10. **SUPPLEMENTAL SALARY:** $ 1,570

    **10.1 Supplemental salary, period:** 03/09/92 -- 06/30/92
    (If supplemental salary, specify period as: Academic Year, or specific dates)

    **10.2 Supplemental salary, reason:** ADMINISTRATIVE
    (Specify reason)

11. **ACTIVITY LEVEL:** FULL-TIME
    (Enter one of the following: Full-time, Part-time, or On Leave)

    **11.1 Basis for conditional compensation:**
    (Course Name, Course Number)

    (Course Name, Course Number)

    (Course Name, Course Number)

12. **LEAVE STATUS:** N/A
    (Enter Sabbatical, Special, Other)

    **12.1 Period of leave:**
    (If on leave, enter period of leave term as: Academic Year or Fall or Spring, and specific start and end dates)

13. **SPECIAL TERMS, CONDITIONS, AGREEMENTS:** YES, SEE EXHIBIT A
    (If there are any special terms, conditions or agreements not covered in paragraphs 1 through 12.1 above, enter "Yes, see Exhibit A"; if there are no special terms, conditions or agreements enter "None")

14. **PROBATIONARY APPOINTMENTS:** A Probationary Faculty Member is eligible to be considered for tenure. The University agrees to notify the Faculty Member of a decision on tenure status in accordance with the policies set out in the Faculty Handbook no later than the date set forth in paragraph 6.1 above. The University and the Faculty Member agree that for purposes of the tenure decision, prior service at this and other colleges or universities has been taken into account in deciding on the Tenure Decision Date set forth in paragraph 6.1.

Exhibit A, page 30

15.  **SPECIAL FACULTY:**  A Special Faculty Member is one on an appointment which does not lead to consideration for tenure.

16.  **RENEWAL OR REAPPOINTMENT:**  Renewal of this Faculty Contract, or reappointment as a faculty member is governed by the Renewal or Reappointment Status set forth in paragraph 7 above, and is as follows:

16.1  **TENURED FACULTY:**  The University agrees that this contract shall be renewed annually, subject to the provisions of this paragraph. Reappointment is subject to the resignation of the Faculty Member, the established retirement policy of the University as set out in the Faculty Handbook, the continued ability of the Faculty Member to perform the duties of the Faculty Member, and the grounds for dismissal for adequate cause specified in the Faculty Handbook. In addition, reappointment is subject to provisions under which faculty may be placed on indefinite leave without pay if reduction in faculty becomes necessary under extraordinary circumstances because of demonstrated bona fide financial exigency, after reasonable notice, and in accordance with established policies and procedures which will be set out in the Faculty Handbook.

16.2  **PROBATIONARY AND SPECIAL FACULTY ON RENEWABLE CONTRACTS:**  The University agrees that a Faculty Member appointed to Probationary status or Special Faculty with renewable contracts shall be given notice of non-reappointment in accordance with the provisions of the Faculty Handbook by the date set forth in paragraph 7.1 above.

16.3  **FIXED TERM CONTRACTS:**  A Faculty Member appointed as Special Faculty with a fixed term contract and Visiting Faculty agree that this contract is for the term set forth herein only and does not entitle the Faculty Member to reappointment or notice of non-reappointment.

17.  **COMPENSATION:**  The University promises to pay to the Faculty Member the amount set forth in paragraph 9 (and 10 where applicable) subject to the following:

17.1  **FULL-TIME FACULTY AND LIBRARIANS:**  The University promises to pay a Faculty Member the salary set forth in paragraph 9 (and 10 where applicable) and in addition thereto, those fringe benefits identified in the Official Plan Documents of the University.

17.2  **PART-TIME FACULTY:**  The University agrees to pay to Part-time Faculty the salary set forth in paragraph 9 (and 10 where applicable) subject to the following conditions:

17.2.1  **CANCELLATION FOR LACK OF ENROLLMENT:**  The duty of a part-time faculty member to teach, and the compensation of a part-time faculty member under this contract is contingent upon sufficient enrollment in the course or courses listed in paragraph 11.1. If there is insufficient enrollment, the University may cancel the course or courses. The University shall give notice of course cancellation to the Part-time Faculty member prior to the third scheduled meeting date for the course. A part-time faculty member is entitled to receive salary only for a course or courses actually taught.

17.2.2  **FRINGE BENEFITS, AND LOSS THEREOF:**  In addition to the compensation set forth in paragraph 9 (or 10 where applicable) the University agrees to pay to the Part-time Faculty Member those fringe benefits identified in the Official Plan Documents of the University. It is agreed and understood between the parties that if there is a total or partial cancellation of the course or courses to be taught by the Part-time Faculty Member, there may be a reduction or elimination of fringe benefits as identified in the Official Plan Documents of the University.

17.3  **EXTERNAL COMPENSATION:**  When set forth in paragraph 8, Faculty Member also receives compensation from the County of Los Angeles or other source for duties complementing the service of the Faculty Member to the University, and it is agreed that the University has no obligation to pay such external compensation.

17.4  **VOLUNTARY FACULTY:**  A Faculty Member designated as Voluntary Faculty in paragraph 6 agrees that the Faculty Member is not entitled to receive compensation from the University under this contract.

17.5  **SUPPLEMENTAL SALARY:**  The University agrees to pay Faculty Member the Supplemental Salary for the reasons and for the period set forth in paragraph 10. Such Supplemental Salary is included in calculating all employment taxes and fringe benefits to which Faculty Member is entitled as set forth in the Official Plan Documents of the University.

18.  **PAYMENT OF SALARY:**  The University agrees to pay Full-time Faculty Member on an academic year appointment the salary shown in paragraph 9 (and 10 where applicable) at the rate of 1/12 on the 26th day of each month beginning September 26 and ending August 26. Faculty Member on a full-time academic year appointment may elect to receive the full academic year salary during the nine month period beginning September 26 and ending May 26 at the rate of 1/9 per month, or during the ten month period beginning September 26 and ending June 26 at the rate of 1/10 per month. The University agrees to pay Full-time Faculty Member on a fiscal year appointment the salary shown in paragraph 9 (and 10 where applicable) at the rate of 1/12 on the 26th day of each month beginning July 26 and ending June 26. Faculty Member appointed in the middle of the academic or fiscal year shall be paid coincident with the term of appointment. The University agrees to pay Visiting, Part-time, Temporary or Special Faculty coincident with the term of appointment.

18.1  Faculty Member understands and agrees that election to receive salary on a nine or ten month payment schedule may entail the loss of certain fringe benefits during the last two or the last three months of the academic year unless payment is made by Faculty Member for Faculty Member's contribution to those fringe benefits. Faculty Member agrees that, by making the election to receive salary on such pay schedule, Faculty Member is relying on Faculty Member's own legal advisor or the Personnel Office, and understands the effect of the choice.

19.  **DUTIES OF PROBATIONARY AND TENURED FACULTY MEMBERS:**  The duties of the Faculty Member are to enhance knowledge and the public good through scholarship, professional development, and academic publications; to teach and counsel students; to participate in scholarly societies and public service; and to share in University governance through service on University and school committees and through performance of similar institutional responsibilities.

19.1  The duties of the Faculty Member shall be in accordance with the normal and customary requirements of the University and the department(s) of appointment, in accordance with the policies set out in the Faculty Handbook, and as agreed upon in detail between the Faculty Member and the department. These duties include maintaining regular office hours. They also include the usual pre-class and post-class registration and commencement activities in line with customary requirements. The time of duties of the Faculty Member may be arranged to include both day and evening service. The place of duties may be arranged to include service at various campuses of the University in line with usual practice of the department/school of appointment.

19.2  The period of service of this contract during the current academic year is for the period set forth in paragraph 9.1, starting one week before the scheduled start of classes in the department of primary appointment.

19.3  Faculty members on twelve-month contracts are entitled to one month vacation, at a time agreed upon with the department of primary appointment.

20.  **DUTIES OF SPECIAL PART-TIME FACULTY:**  The duties of the Faculty Member under this contract are to teach the courses set forth in paragraph 11.1 and/or to perform during the period of this contract such other institutional responsibilities as may be agreed on with the department(s) of appointment.

21.  **DUTIES OF LIBRARIANS:**  It is the duty of the Faculty Member to serve as a member of the library staff, performing such institutional responsibilities as may be agreed with the department(s) of appointment, in line with customary requirements.

22.  **DUTIES OF SPECIAL FACULTY:**  The duties of a Special Faculty member normally are primarily teaching, primarily research or primarily clinical practice. Extension of duties beyond the primary responsibilities of the Special Faculty member may not be undertaken without the written consent of the appropriate Dean and will not necessarily lead to change of status or to consideration for tenure.

23.  **OTHER AGREEMENTS:**  The Faculty Member and the University agree to abide by the applicable University regulations, policies and procedures published in the Faculty Handbook. The Faculty Member expressly agrees to the University's patent and outside consulting and teaching activities policies as published in the Faculty Handbook. The furnishing of physical facilities and laboratories in connection with the Faculty Member's employment shall be in accordance with the customary policies of the University.

23.1  The University also expressly agrees to adhere to the standards and procedures concerning academic freedom, academic tenure, and academic due process set out in the Faculty Handbook.

24.  **ENTIRE CONTRACT:**  This contract between the University and the Faculty Member also includes the academic practices and policies, including policies on faculty/student relations, set out in the Faculty Handbook, as they may be revised from time to time through established collegial processes.

24.1  **SPECIAL TERMS, CONDITIONS OR AGREEMENTS:**  Faculty Member and the University agree that there are no special terms, conditions or agreements relating to duties, compensation, tenure, reappointment, retirement, grants, laboratories, office space or other physical facilities, moving expenses, leaves, consulting, housing, or any other term of employment except those set forth in paragraph 13 and Exhibit A. Faculty Member agrees that no previous oral discussions or correspondence, including appointment letters, are binding on the University except as incorporated in paragraph 13 and Exhibit A.

24.2  **AMENDMENT IN WRITING ONLY:**  Faculty Member and the University agree that this contract may be altered, amended or changed only by a written agreement between Faculty Member and the University.

25.  **NOTICE:**  Any notice required to be given by the University to Faculty Member under the terms of this Faculty Contract shall be given by U.S. Mail, Return Receipt Requested, to the address of Faculty Member on file with the University department set forth in paragraph 4 above.

HAY, JOEL W.

**UNIVERSITY OF SOUTHERN CALIFORNIA**

By _Steven B. Sample_

STEVEN B. SAMPLE,
President of the University

Dated: _____

_Joel W Hay_

FACULTY MEMBER

Dated: _6/22/97_

DEAN

Exhibit A, page 51

## THE UNIVERSITY OF SOUTHERN CALIFORNIA

## *Special Terms, Conditions, or Agreements*

This Exhibit A is incorporated and made a part of the Faculty Contract, and includes the following:

As a newly recruited faculty member to the School of Pharmacy, Dr. Hay has agreed:

- o Seed money in the amount of $25,000 will be provided to help initiate his research program. These funds can be used for any expense except salaries and must be spent by June 30, 1992.

- o Housing assistance has been discussed and the School is prepared to offer $20,000 in purchase of a new home in the Los Angeles area contingent on selling his other properties and on approval of his application to the USC Treasurer's Office.

- o Dr. Hay will be expected to cover 25% of his base salary from awarded research grant support.

- o Dr. Hay accepted the administrative position of Chairman, Department of Pharmaceutical Economics and Policy, effective March 9, 1992. Concurrent with this appointment, an administrative supplement was awarded in the amount of $5,000. Future salary increases will be based on the annual base rate, including the administrative supplement. Dr. Hay will relinquish the administrative supplement and the accumulated annual increases on this amount at a time when he might step down as Department Chairman.

*The School will cover relocation expenses for Dr. Hay & family as per letter of our offer JH*

UNIVERSITY OF SOUTHERN CALIFORNIA

By _____
STEVEN B. SAMPLE
President of the University

By _____
JOEL W. HAY

Dated: _____

Dated: _____

EXHIBIT A

h:\...\sal\EX_A9192.sf

Exhibit A, page 52

# EXHIBIT 3

### 3-A   FACULTY COMPOSITION

The University Bylaws define the faculty of the University of Southern California as follows:

> *9.2(a) <u>Composition</u>.  The University Faculty shall consist of the President of the University; the Provost and Senior Vice President for Academic Affairs; Academic Deans and Directors; and members of the teaching and research staffs holding titles including the following terms: Professors, Associate Professors, Assistant Professors, Instructors, Lecturers (but not Assistant Lecturers) and Librarians.*

The faculty consists of those properly appointed members of the teaching and research staffs holding these faculty titles, whether or not tenured or tenure-eligible, whether full- or part-time.  However, academic staff as listed in section 4-B (2)(h) are not designated as faculty.

### 3-B   FACULTY RIGHTS AND RESPONSIBILITIES

### 3-B (1)   Academic and Professional Freedom

The University adheres to national standards and procedures concerning academic and professional freedom, academic tenure, and full academic due process.  Chapter 4, Faculty Appointments, Promotions and Tenure; Chapter 7, Faculty Grievances; and Chapter 8, Faculty Dismissals, provide the details as to how this adherence is made specific.

*3-B (1)(a)   Academic Freedom*

The University of Southern California exists for the common good, and not to further the interest of solely the individual faculty member or the institution as a whole.  The common good depends upon the free search for truth and its free exposition.

Academic freedom protects all faculty, of every track and every rank, full-time and part-time.  Academic freedom is essential to these purposes and applies to both teaching and research.  Freedom in research is fundamental to the advancement of truth.  Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning.  It carries with it duties correlative with rights.

Faculty members are entitled to full freedom in research and the publication of the result, subject to adequate performance of their other academic duties, but research and consultation for pecuniary return shall be in accord with University policy.  Basic principles on the right of the faculty to freedom from undue restrictions by sponsors and donors are set out in Section 5-B (1), and similar principles apply to educational activities.

Faculty members are entitled to freedom in the classroom in discussing their subject; to the corollary responsibility to state the truth as they see it; and to the exercise of critical self-discipline and judgment in using, extending, and transmitting knowledge.  Faculty members are citizens, members of learned professions, and officers of an educational institution.  When they speak or write as citizens, they should be free from institutional censorship or discipline, but their special position in the community imposes special obligations.  As educational officers, they should remember that the public may judge their profession and the University by their utterances.  Hence, they should at all times be accurate, should exercise appropriate restraint, should show respect for the opinions of others, and should make every effort to indicate that they are not speaking for the University.

Because it provides freedom and economic security, tenure is indispensable to the success of an institution in fulfilling its obligations to its students and to society.  (See Section 4-E for additional information about tenure.)

*3-B (1)(b)    Professional Freedom*

Professional freedom is inherent within the concept of academic freedom and denotes the right of a faculty member to select those approaches to the development and exercise of professional competence and those allocations of time and place for alternative functions and commitments as appear best fitted for this purpose.

Professional responsibility is a corollary of professional freedom.  The faculty member owes responsibility to the standards of his or her discipline, professional and faculty colleagues, students, educational institution, and the community at large.

## 3-B (2)    Academic and Professional Responsibilities

Although various groups contribute in different ways to the University's well-being, it is the faculty who preeminently create and enhance the scholarly excellence of the University.  Their importance to the intellectual life of the University and the community at large confers on them, individually and collectively, certain responsibilities to the institution, to their students, and to their respective disciplines, in line with the University Code of Ethics, Section B of the Appendix.  Consequently, faculty academic status and matters related thereto are primarily a faculty responsibility.  This includes appointments, reappointments, decisions not to reappoint, promotion, the granting of tenure, and dismissal.

The faculty's role on curriculum is set out in the University Bylaws as follows: